## WALKER *v.* ATLANTA & WEST POINT RAILROAD CO.

1. Relatively to an employee of a railway company, who, in the performance of his regular daily work for the company, had walked over or near a defective place in the track hundreds of times during a considerable period, and who had thus become fairly chargeable with a knowledge of the existence of the defect, it was not on the company's part an act of negligence to allow the same to remain unrepaired.

2. If because of such defect the employee fell and was run over and injured by a locomotive, it would be a question for determination by a jury, taking into consideration the nature of the defect, its location, the employee's movements with reference thereto, and all the attendant facts and circumstances, whether or not the fall was due to the negligence of the employee, or was merely the result of misfortune or accident. In determining this question, the jury should also inquire whether or not the employee, in the line of his duty, should have come in contact with the defect at all.

3. Under the evidence in the present case, the defective condition of the "frog" was not imputable to the defendant as an act of negligence. As, however, there was testimony warranting a finding that the engineer was negligent in failing to stop the locomotive after the plaintiff had fallen, and as the fall undoubtedly contributed to the injury the plaintiff received, the case should have been submitted to the jury, in order that they might pass on all questions of negligence, both as to the plaintiff and the defendant, arising upon the facts proved. It was, therefore, erroneous to grant a nonsuit.

Argued December 10, 1897. — Decided April 1, 1898.

Action for damages. Before Judge Reid. City court of Atlanta. May term, 1897.

*Glenn & Rountree,* for plaintiff.
*Dorsey, Brewster & Howell,* for defendant.

LITTLE, J. 1. The plaintiff based his right to recover in the present action on two distinct allegations of negligence on the part of the defendant railroad company, which will be separately considered in the order in which they are made. The plaintiff first alleged that, as an employee of the defendant, it was his duty, among other things, to take engines attached to trains coming in and going out on trips, to and from the car-shed in the city of Atlanta, and at crossings between the car-shed and shops; it was also his duty to alight from the engine and walk a few paces in advance of it, to clear the crossings of people and to warn the passers-by to get out of the way of the ap-

proaching train. It is alleged that on the occasion when the injury now sued for was inflicted upon him, he, while acting in the line of his duty, alighted from an engine at Mitchell-street crossing in the city of Atlanta, and walked on the right side of the track and in advance of the engine six or eight feet, and while walking and looking straight ahead, warning passers-by to get out of the way of the approaching engine, and while in the performance of his duty flagging said train over the street-crossing, his feet struck against a frog which projected one and one fourth inches above the main line of track, so that he stumbled and fell, and while trying to catch and keep from falling, the pilot of the advancing engine caught his left leg on the right side of the engine and threw him over, lengthwise on the pilot, and he was jerked to the ground and both feet fell under the pilot. Plaintiff managed to get one of his feet out from under the pilot, but the wheel caught and rolled over his left leg, cutting his foot off and otherwise injuring him as set out in the petition. It was alleged that this injury was caused by the negligence of the defendant in having and allowing the frog, over which plaintiff stumbled, to project above the main track as above stated. On the trial the plaintiff testified, among other things, that the frog over which he stumbled, and which projected above the main track, should have been on a level with the latter. He further testified that he had been working in the yards, of which this crossing formed a part, eight or nine years in different ways; that he had passed over the Mitchell-street crossing two or three times a day every day for a period of nearly two years, and over this identical frog; that he used that switch and frog every time he came out with the engine—two or three times a day; that the frog belonged to the track the switch was on, and over which the engines plaintiff was accustomed to precede across the street had to pass.

Assuming that the grounds or trackway, over which the plaintiff in the discharge of his duties had to pass, were defective in the respect indicated, the question to be determined is, whether the railway company, in allowing the grounds or trackway to remain in such defective or dangerous condition, was chargeable with negligence by reason thereof, relatively to the

plaintiff.   We recognize the rule, that the employer is bound to exercise ordinary care in furnishing its employees reasonably safe machinery and appliances with which to work, that he is also bound to exercise ordinary care to provide a reasonably safe working-place, and that this rule applies to switch-yards or yards where trains are made up, and that employees whose duties require them to perform service in the yards of the company are entitled to the protection afforded by the rule; and we come at once to consider whether, under the facts of this case, the plaintiff was entitled to recover for the injury sustained by reason of the alleged negligence of the defendant in failing to remedy the defective or dangerous condition of the track over which the plaintiff was required to pass in the discharge of his duties, according to the allegations of the petition.   As a limitation upon the right of an employee to recover for injuries resulting from defective machinery, appliances, or working grounds or places, it is well settled that no recovery can be had for defects of which such employee has knowledge, and that he must exercise ordinary care and caution in detecting such defects; and hence the establishment of the rule that the servant not only assumes all risks ordinarily incident to the business in which he is engaged, but also all other open and visible risks, whether usually incident to the business or not.   The servant is bound to see patent and obvious defects in appliances furnished him, and dangerous conditions of the premises upon which he is to work, which are open and visible.   He must himself assume the risks and hazards which are open to observation, and is bound, to a certain extent at least, to exercise his own skill and judgment in discovering defects not concealed and in preventing injuries which may arise therefrom; he can not blindly rely upon the care and skill of his master.   The servant is presumed to know of defects which are obvious, and is chargeable with knowledge of such defects; and this knowledge may be inferred from evidence of his familiarity with the working place or grounds upon which he is required to work.   In the present case the defect of which the plaintiff complains was one which would have been apparent to him upon casual inspection; his opportunities for knowing the dangers which the existence of this defect created, as

incident to his service, were better than those of the defendant by reason of his constantly passing over the alleged defective frog and his general familiarity with the yard; and we are of the opinion that, relatively to the plaintiff, it was not on the defendant's part an act of negligence to allow the defective frog to remain unrepaired.

2. As we have said, the servant is under a duty to be reasonably observant of the machinery he operates, and to exercise reasonable care in examining his footings and surroundings in and about the premises upon which he is to work, and otherwise to use ordinary care to avoid injuries to himself. Whether where an employee, after having knowledge of defects in machinery or those which may exist on the premises, or being chargeable with such knowledge, continues to work with or upon the same, without reporting such defects to the master, or making any effort to repair the same, or otherwise seeking to shield himself from dangers attendant upon the existence of such defects, he is guilty of negligence, is a question to be determined by the inquiry, whether a person of ordinary prudence would have believed the defects dangerous to, or increased the risks of, the service in which he was engaged. If such a defect, in its relation to the service being performed, is not of such a character as to produce harmful results which might by reasonable and careful foresight have been anticipated, no negligence can be attributed to the servant. If the injury resulting from such defect was of an unusual character, against which ordinary care and prudence on the part of the servant could not have protected him, such injury, with respect to the servant, would be a mere casualty or accident. Whether in the present case the plaintiff was chargeable with negligence in pursuing his duties while the alleged defect existed in the yards over which he had to pass, without discovering and reporting the same to the defendant, or otherwise taking precautions to shield himself from any dangers incident thereto, is a question of fact which the jury, after taking into consideration the nature of the defect, its location, the plaintiff's movements with reference thereto, his familiarity with the premises, and all the attendant facts and circumstances, must determine.

It was contended by the defendant in error, that assuming that the frog was defective, the plaintiff would not be entitled to recover, because, as insisted by the defendant, he occupied voluntarily a place of danger in performing his duties, when he could have occupied a place of safety where the duties could have been as well discharged. This contention is predicated upon the testimony of the plaintiff himself, that the frog over which he stumbled was probably less than a foot from the right-hand rail of the track on which the engine he piloted was moving; and the further testimony of the plaintiff, that if he had walked two feet to the right of the rail on the right side, he would have escaped the frog and the ends of the cross-ties, and any part of the engine, had he stopped suddenly; the plaintiff testifying that the engine, in passing over the track opposite the frog, would extend out over the latter about two feet. It was contended that, by occupying a position of at least two feet to the right of the track, the plaintiff could have discharged his duties equally as well, and at the same time been out of all danger. The principle is well established, that if a servant voluntarily, and with no emergency upon him, selects a dangerous way to perform a duty when there is a safe way, knowing the way thus selected to be dangerous, or if the danger is apparent or obvious, then he assumes the risk and would be guilty of contributory negligence. The mere fact that the party was injured because of the way selected, when if he had selected the other way the injury would have been avoided, alone, does not fix upon him contributory negligence. The result is not the true test. Under the facts of the present case, it was a question for the jury whether there was a safer way to discharge the duty than that selected by the plaintiff, and whether the way actually selected by the plaintiff was one which to a person exercising ordinary care and prudence in the discharge of duty would have been obviously more dangerous. It was incumbent on the plaintiff to exercise ordinary care while engaged in the line of his duty; and whether such care was exercised by him in selecting the position, relatively to the track and moving engine, which he did adopt for the performance of the duty imposed upon him, is a question which should be settled by the jury.

3. Holding, as we do, that the defective condition of the frog was not imputable to the defendant as an act of negligence, we now come to consider the second count of negligence upon which the plaintiff relied for a recovery, which is, in substance, that at the time the injury was inflicted, the engine was running at a speed of not more than a mile or a mile and a half per hour, and could easily have been stopped by the engineer after plaintiff fell and before the engine reached him, but that the engineer made no effort to stop the engine, and, at the time plaintiff fell, was looking back behind him towards the rear of his engine or train, and did not see that plaintiff had fallen until the engine had knocked him down, and attention was then called to the position of the plaintiff by some passer-by shouting to the engineer, calling his attention to the fact. On this point there was testimony that the plaintiff fell on the right side of the engine; that the engineer was situated in the right side of the cab of the engine, and there was nothing to obstruct his view of the plaintiff at the time of the fall; that plaintiff cried out as soon as he was caught by the pilot of the engine; that the engine was moving very slowly, not more than one or two miles an hour; that it could have been stopped within a distance of twelve inches by the application of the brakes; that after he fell, a bystander ran a distance of twenty-four feet and succeeded in pulling one of his feet out, but that the other was caught by the front wheel of the engine and cut off; that the wheel passed over his foot or leg at a point about ten or eleven feet distant from the frog over which he stumbled. Another witness testified, that after plaintiff cried to the engineer, the latter put on air-brakes and threw up his hands; that witness thought plaintiff had been run over when this was done, because the engine stopped immediately.

If it be true that the engineer was negligent in failing to be on the lookout for the plaintiff, and in failing to stop the engine in time to prevent the injury, which is a question of fact to be determined by the jury, it becomes material to inquire whether the plaintiff was himself chargeable with any negligence which contributed to the injury sustained by him. If he was, he would not be entitled to recover, though it might

appear that the engineer, in the exercise of ordinary care, might have discovered the plaintiff's perilous position in time to have averted the injury.   With reference to injuries inflicted by railroad companies, it is provided by section 2323 of the Civil Code that: "If the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the per-. son injured, his employment by the company shall be no bar to the recovery."   Under this provision of the code it has been ruled, that the doctrine of contributory negligence does not apply to the case of an injury sustained by an employee, so as to permit him to recover and diminish the amount of the recovery in proportion to the fault attributable to him; but that in order to recover the employee must himself be free from fault, and if the injury is sustained by him in consequence of any fault or negligence on his part, he can not recover.   E. T., V. & G. Ry. v. Maloy, 77 Ga. 237.   In construing the words "without fault," as employed in the code section referred to, this court, in the case of Central Railroad Company v. Lanier, 83 Ga. 587, held their meaning to be, "that the party suing must not have done anything to contribute to his injury, or must have done everything to prevent the consequences of the company's negligence."   In the case of S., F. & W. Ry. v. Barber, 71 Ga. 644, it was held that, in order for a railroad employee to recover from the company for a physical injury to him, done in the business in which he was engaged, he must be blameless about the business which caused the injury.   While it is well settled that if the negligence or carelessness of the employee does not contribute to the injury, as for instance where he is at fault about something wholly disconnected with the transaction, or was at the time at fault about a matter that had nothing to do with the catastrophe, a recovery on the part of the employee will not be debarred thereby (Central Railroad v. Mitchell, 63 Ga. 173; S., F. & W. Ry. v. Barber, 71 Ga. 644), yet it is equally as well settled, that if the employee immediately or remotely, directly or indirectly, caused the injury or any part of it or contributed to it at all, he is not entitled to recover.   Prather v. Richmond & Danville Railroad Co., 80 Ga.

427. And in the case of *Georgia Railroad Co.* v. *Hicks*, 95 *Ga.* 301, it was ruled that "negligence of the plaintiff [an employee], however slight, which contributes in an appreciable degree to the cause of the injury, defeats a recovery."

In view of these authorities, if it should be determined that, under the rules laid down in the second paragraph of this opinion, the plaintiff was negligent in pursuing his line of duty, either because of the defective condition of the frog, or in selecting the particular way or footing adopted by him in the discharge of the duty, — that is to say, if the jury should determine that there was a safe way which should have been apparent to the employee, in which he could have discharged the duty, and that the way selected by him was dangerous, and that the danger was, or ought to have been, apparent to him, then we think the plaintiff, notwithstanding the engineer may have been negligent, would not be entitled to recover, because, under the facts of the case as they appear in the record, no other conclusion can be reached except that the fall contributed proximately to the injury. The fall was concurrent, simultaneous and connected with the alleged act of negligence on the part of the engineer. It was so far an efficient cause of the injury that, without it, the injury would not have happened. If the employee was not negligent in either of the respects pointed out in this opinion, but it should be determined by the jury that the fall was a mere accident, and it should further appear that the engineer was negligent in failing to stop the engine in time to prevent the injury after the fall occurred, then the defendant would be liable. We think the court committed error in granting a nonsuit, as, under the view here expressed, the case should have been submitted to the jury, in order that they might pass on all questions of negligence, both as to the plaintiff and the defendant, arising upon the facts proved.

*Judgment reversed. All concurring, except Cobb, J., absent.*