Cause of action for injury to railroad-track workman by fall from bridge in course of his employment was not alleged. General demurrer to his petition was properly sustained.
STEPHENS, J., dissents.
 DECIDED MAY 20, 1940.
Fain Ray brought suit against the Western Atlantic Railroad, to recover damages because of injuries alleged to have been sustained by him from the negligence of the defendant, the petition as amended alleging substantially as follows: On December 15, 1938, he was employed by the defendant as a section hand to work on the tracks, right of way, and bridges and trestles of the defendant, his duties as such being to operate a jack or jacks in the raising of tracks or cross-ties along the right of way of the defendant's railroad. While so employed he was engaged with other employees in working on the track of the railroad on a decked bridge over Chickamauga Creek about three miles south of Ringgold in Catoosa County, and in the performance of his duties he placed a jack under the rail and cross-ties on said bridge and raised the same in order that other employees of the defendant might remove worn-out cross-ties and ballast and slag and replace them with new ballast, cross-ties, and slag. After placing said jack and raising the rail and ties to the desired height, he left the bridge for the purpose of performing other duties incumbent upon him in the employment of the defendant, went farther up the track from said bridge, and continued his work of placing jacks under the tracks and ties of the defendant. In placing the jacks and doing work necessary thereto he was occupied with said work, and was unable to see or know what was being done by the other employees working on the bridge, *Page 610 
his time being then entirely taken up by his work off the bridge. After he left the bridge other employees of the defendant entered thereon for the purpose of removing cross-ties from under the track and placing new ones thereunder, and placing new ballast or slag around the new cross-ties and tamping and packing them. The other employees moved new slag onto the bridge and unloaded it for the purpose of replacing the old slag or ballast when new ties were placed under the rails on the bridge. In order to put in new cross-ties under the rails it was necessary to remove the old worn ones and to dig out the old ballast and slag under the rails and around the ties. After the plaintiff had placed said jack and raised the cross-ties and rail along the track, the other employees of the defendant took out some old ties and the old slag or ballast around where he had placed said jack, and put in new cross-ties and ballast and slag. It was the duty of the employees of the defendant, when replacing cross-ties or ballast, to tamp or pack the new slag or ballast firmly and securely around the ties and rails, so that they would not be loose and give way, and to tamp the same down below the level of the cross-ties; and it was the duty of the other employees of the defendant to do this before the plaintiff was required to remove the jack from under the ties and rails where he had placed it. About nine o'clock on the morning of the day aforesaid, after plaintiff had placed the jack as aforesaid, and after other employees had removed cross-ties and put new cross-ties under the rails on the bridge and put new ballast or slag around them where he had put the jack for raising the ties and rail, he received notice that a train was approaching the bridge for the purpose of going over it, and as he saw the train approaching, as part of his duties as an employee of the defendant he went on the bridge for the purpose of removing the jack in order that the train might pass over the bridge. When he got to the place where the jack had been placed, he found that some one had moved it a short distance from where he had placed it on the outside of the track. It was the duty of any one removing a jack to place it on the inside of and between the tracks, but whoever removed this jack had placed it on the outside of the track. It was the duty of each man operating a jack to remove it. When the plaintiff went back to remove the jack some one else had changed its position; and as plaintiff stepped across the rail to pick up the jack the ballast of slag which had been *Page 611 
loosely placed and had not been properly tamped turned under him, throwing him off of the bridge. Ballast or slag, when placed around rails or along the railroad-track, when newly placed, looks the same if tamped as it does when it is not properly tamped or packed, and plaintiff had no way of knowing or finding out, not having been present when the ballast was put on the bridge, if the ballast or slag had been properly tamped or packed alongside of said railroad-track. It was the duty of the track hands putting down said ballast to properly and firmly pack and tamp it before leaving it or having the jack taken from under the track; and plaintiff did not know that this had not been done until he stepped on the loose ballast in order to remove the jack from the bridge. When he was off the bridge, after placing the jack on the bridge, he was engaged in placing other jacks, and in so doing was required to receive orders from the foreman who was farther up the track from the bridge, and plaintiff's entire attention was directed towards the foreman up the track, from whom he was receiving directions as to the raising and lowering of the track off of the bridge, and for this reason plaintiff could not see or know what was being done on the bridge. When he left the bridge the ballast or slag was in piles on the bridge, and when he went back on the bridge the same had been smoothed and looked as if it had been properly tamped and packed, it being the duty of the track hands placing said ballast to properly tamp and pack the same before leaving it. When he went to remove the jack the other track hands had left the bridge; when he attempted to remove the jack the slag or ballast around the cross-ties on the bridge gave way under his feet, causing him to fall off of the bridge onto the ground under the bridge, severely injuring him. When the other employees of the defendant removed the old cross-ties on the bridge and replaced them and put new slag or ballast around them, they left loose the slag or ballast where plaintiff had placed his jack, and did not firmly and securely tamp them as these employees were required to do; they left loose slag and ballast along the edge of the bridge when it was their duty to tamp and pack all slag and ballast and remove from along said ties and track that slag and ballast not packed or tamped. This was not known to plaintiff when he went onto the bridge to remove the jack, and he had no way of knowing that said slag or ballast had not been properly placed as it was required to be, and *Page 612 
that it had been left loose around where he had placed his jack. The other employees of the defendant working on the bridge placed the new slag or ballast around the cross-ties on the bridge where the jack was, in a negligent and unsafe manner, in that they did not properly tamp and pack the same firmly as they were required to do, but left said slag or ballast loose, and left unnecessary slag lying around said cross-ties and rail, and failed to remove the unnecessary slag or ballast from around the ties or track. They left the track and roadbed on the bridge in an unsafe and dangerous condition, and failed to warn the plaintiff that they had left the bridge in an unsafe condition. The petition set forth injuries and damage alleged to have been sustained as a result of the fall of the plaintiff from the bridge; and negligence of the defendant's employees was alleged in numerous particulars. The exception is to the judgment sustaining the general demurrer to the petition as amended.
There being no allegation to the contrary, it must be assumed that the plaintiff servant in the present case was of ordinary intelligence and laboring under no disability which rendered him incapable of knowing and appreciating the dangers incident to his employment. Thomas v. Georgia Granite Co.,140 Ga. 459, 461 (79 S.E. 130). Construing the petition most strongly against the pleader on general demurrer, it appears that although it was alleged that the plaintiff did not know and had no way of knowing that the loose slag or ballast which caused him to fall and brought about his injuries as he stepped across the railroad-tracks had not been properly tamped or packed down, the pleaded facts show that he had equal means with the defendant, his master, of knowing of the alleged defective condition, and by the exercise of ordinary care could have avoided the injury which he sustained. The petition did not set forth a cause of action, and the court properly sustained the general demurrer. Code, § 66-303; Western Atlantic Railroad Co. v. Bradford,113 Ga. 276 (38 S.E. 823); Stewart v. Seaboard Air-Line Ry.,115 Ga. 624 (41 S.E. 981); Ludd v. Wilkins, 118 Ga. 525
(45 S.E. 429); Central of Georgia Railway Co. v. Price,121 Ga. 651 (49 S.E. 683); Lee v. Atlantic *Page 613 Coast Line Railroad Co., 125 Ga. 655 (54 S.E. 678);Hendrix v. Vale Royal Mfg. Co., 134 Ga. 712 (68 S.E. 483);Norris v. American Railway Express Co., 156 Ga. 150, 155
(118 S.E. 686); Central of Georgia Railway Co. v. Henderson,6 Ga. App. 459 (65 S.E. 297); Biederman v. Montezuma Mfg.Co., 29 Ga. App. 589 (116 S.E. 225). The present case is distinguishable from the cases cited for the plaintiff, and especially those cases in which the servant was so engrossed in executing an order of the master at the time of the injury as to excuse his failure to become aware of the defect causing such injury. The pleaded facts here show that while the plaintiff had been executing orders from a superior a short time before his injury, he was under no restraint or engrossment whatever when he stepped upon the loose slag and was injured.
Judgment affirmed. Felton, J., concurs specially.